**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2964-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NIKITA CARDWELL,

     Defendant-Appellant.

_____

Submitted June 2, 2020 – Decided July 9, 2020

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-02-0043.

Joseph E. Krakora, Public Defender, attorney for appellant (John Joseph Bannan, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Nikita Cardwell, a former corrections officer at Northern State Prison (NSP), appeals from the December 13, 2018 denial of his petition for post-conviction relief (PCR). We affirm.

We derive the facts from our prior decision in the direct appeal. State v. Cardwell, No. A-0538-14 (App. Div. Feb. 21, 2017).

Defendant was charged in an indictment with second-degree conspiracy to commit bribery in official matters, official misconduct, and distribution of controlled dangerous substances (CDS), N.J.S.A. 2C:5-2, 2C:27-2(c), 2C:30-2, 2C:2-6, 2C:35-5(a)(1), 2C:35-5(b)(3), and 2C:35-5(b)(12) (count one); second-degree official misconduct, N.J.S.A. 2C:30-2 and 2C:2-6 (count two); second-degree bribery in official matters, N.J.S.A. 2C:27-2(c) and 2C:2-6 (count three); and third-degree money laundering, N.J.S.A. 2C:21-25(a) (count four). Id. at 1-2.

The charges arose from a 2011 undercover investigation conducted by the Special Investigations Division (SID)[1] of the New Jersey Department of Corrections that was prompted by an NSP inmate's report that defendant had

_____

[1] The SID is responsible for "investigating offenses that occur within the State's correctional system, including offenses involving the possession of narcotics, smuggling contraband into the prisons, an officer's undue familiarity with inmates, and assaults." Cardwell, slip op. at 2.

smuggled contraband into the prison for him. Ibid. The SID enlisted the inmate, Alvin Blankson, his brother, Brendan Davis, and their sister Nyantee Ashley Davis (Ashley) to assist in the investigation. Ibid. At the time, Alvin and Brendan were both housed in NSP's F-unit where defendant worked. Id. at 2-3.

Alvin was subsequently moved out of the F-unit, but Brendan remained there. Ibid. Investigators planned to have Ashley give defendant $1000 to purchase heroin and marijuana and smuggle it into the prison for Brendan. Id. at 3. Defendant would be paid $300 for his services. Ibid. Another inmate, J.J., gave Ashley's phone number to defendant. Ibid.

In June 2011, investigators recorded a phone call between Ashley and defendant in which defendant stated there would be no exchange until Ashley had the $1300 in cash. Ibid. In addition, Ashley was instructed to speak with Brendan about how he was going to receive the contraband. Ibid.

After investigators learned defendant intended to use a third party to make the exchange, they changed the plan. Ibid. Under the new scheme, Ashley would ask defendant to smuggle into the prison $400 in cash for Brendan to buy a phone and a prepaid telephone calling card for a fee of $300. Ibid. On the day of the exchange, investigators gave Ashley $700 in cash and

a telephone calling card and placed a recording device under a seat in her car. Id. at 4.

Defendant called Ashley numerous times before their scheduled meeting. Ibid. He initially gave her the meeting location. In the second call, defendant told Ashley that someone named "Farad," later identified as Samuel Dawson, arriving in a green car, would meet her. Ibid. Earlier that day, defendant had picked up Dawson, and they drove in a green car to Carteret where defendant told Dawson to meet someone in a parking lot. Ibid.

When Dawson arrived, Ashley gave him a bag with the money and telephone calling card. Ibid. Defendant contacted Ashley to confirm the transaction had been completed. Ibid. Dawson walked two blocks to where defendant was parked and gave him the bag. Ibid. Defendant then drove to a nearby gas station where he exchanged a $100 bill from the bag for five $20 bills. Ibid. Investigators confirmed the $100 bill from the gas station was one of the bills they had provided Ashley. Id. at 4-5.

In July 2011, Alvin informed the SID that defendant gave Brendan $400 in cash and a telephone calling card. Id. at 5. Investigators confirmed these were the items previously given to Ashley. Ibid. The surveillance and audio teams recorded the exchange between Ashley and Dawson.

A-2964-18T1

Later that month, investigators arranged another transaction in which Brendan asked defendant to smuggle heroin and marijuana into the prison for a $800 cash fee. Ibid. Ashley recorded a phone call with defendant during which they agreed to meet a couple of days later to make the transaction. Ibid.

Defendant did not come to the planned meeting with Ashley. Ibid. When he arrived at NSP for work that same day, he was arrested by SID investigators. Ibid. After being informed of his Miranda[2] rights, defendant denied the allegations but admitted he knew Ashley, Brendan, and Dawson. Id. at 6. Defendant conceded he had driven Dawson to meet someone in Carteret but had only received a small amount of money from him – $5 – as gas money for the ride. Ibid. After investigators told defendant they had a video recording of him exchanging a $100 bill for five $20 bills, defendant stated Dawson gave him the $100 bill, asking him to change it into $20 bills. Ibid.

A search of defendant's green Nissan Sentra revealed two cell phones and a paper which contained the initials "J.J." and Ashley's phone number. Ibid. After obtaining a warrant, the cell phone data confirmed Dawson accompanied defendant to Carteret for the transaction with Ashley. Ibid.

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2964-18T1

Defendant subsequently filed a motion to suppress his statements made to SID investigators after his arrest. Id. at 2. The trial court denied the motion. Ibid.

The State called Alvin and Brendan as witnesses during the trial. On cross-examination, Alvin referred to a prior transaction he had with defendant smuggling marijuana into the prison. Alvin had not previously disclosed this information to the State. Brendan also testified that defendant had approached him about selling drugs in the prison before Brendan began informing for SID. Defense counsel questioned both inmates about this testimony, attempting to challenge their credibility and discredit their version of the events.

Defendant also testified. He contended he did not commit any crimes and he was running his own independent undercover investigation of Alvin and Brendan. Id. at 6.

In April 2014, a jury found defendant guilty of conspiracy to commit bribery and official misconduct involving more than $200, but not guilty of conspiracy to distribute CDS; guilty of official misconduct involving more than $200; and guilty of bribery in official matters involving more than $200. He was acquitted on count four. Id. at 7.

A-2964-18T1

Defendant's motions for a new trial and for reconsideration of the order denying the suppression of his statements were denied.  Ibid.  At the sentencing hearing, the trial court merged counts one and three into count two, and sentenced defendant on count two to a seven-year imprisonment term with a five-year period of parole ineligibility.  Ibid.  Defendant was prohibited from holding any public office under N.J.S.A. 2C:51-2 and forfeited his pension benefits pursuant to N.J.S.A. 43:1-3.1.  Ibid.

On direct appeal, defendant challenged the denial of his suppression motion, asserted prosecutorial misconduct during the closing arguments, and argued his sentence was excessive.  Id. at 7-8.  We affirmed defendant's convictions and sentence.  Id. at 1, 25.

In 2017, defendant filed a pro se PCR petition.  Counsel was assigned and thereafter filed an amended PCR petition and a brief in support of the petition.  Defendant argued trial counsel was ineffective by: (1) failing to challenge the validity of the State's claim that there was no available surveillance video evidence from the prison; (2) failing to visit the crime scene in Carteret or the prison where the alleged illegal activity occurred; (3) failing to investigate the security protocols corrections officers undergo before entering the prison; and (4) opening the door to "damaging" N.J.R.E. 404(b)

7

testimony from several State witnesses that defendant had previously smuggled drugs into the prison.

Defendant also filed a pro se supplemental brief raising the following arguments: (1) the trial court erred by denying his motion to suppress the statement he gave to the investigators on grounds that he waived his <u>Miranda</u> rights; (2) trial counsel failed to properly impeach State witnesses; (3) the chain of custody evidence was not challenged; (4) trial counsel failed to properly investigate the informant witness's location at NSP; (5) the phone intercepts were illegal and inadmissible; (6) the trial court erred by allowing the jury to hear the phone intercepts; (7) the State improperly withheld prison surveillance videos, which were crucial to defendant's case; (8) trial counsel consented to redactions of phone recordings to the prejudice of defendant; (9) trial counsel, the State, and the trial court held improper pre-trial conferences in the jury room outside the presence of the jury and of defendant to his detriment; (10) trial counsel failed to request a change of venue; (11) trial counsel was not given proper time to prepare for trial; (12) trial counsel was ill during the trial and the effects of his illness were detrimental to defendant; (13) trial counsel failed to suppress the recording disc presented to trial

A-2964-18T1

counsel at the beginning of the Driver[3] hearing; (14) trial counsel failed to properly investigate co-defendant activity prior to trial; and (15) trial counsel failed to investigate testifying SID investigator's credentials and background.

Following argument on the petition, the PCR court issued an oral decision on December 13, 2018, finding defendant had not presented a prima facie claim of ineffective assistance of counsel and an evidentiary hearing was not required. The petition was denied.

In addressing defendant's argument that trial counsel failed to investigate the availability of prison surveillance video evidence, the PCR court found defendant had not alleged the videos existed at the time of discovery or were still in existence. The court noted the State had represented during discovery that no surveillance videos were available because the videos taped over themselves every fifteen days. The investigators could not have obtained the videos within that short time period without alerting prison staff to the investigation.

The PCR court noted trial counsel used the lack of video evidence against the State at trial in arguing to the jury that the State conducted a

---

[3] State v. Driver, 38 N.J. 255 (1962).

"lackluster investigation" and "could not prove definitively that the defendant made the alleged exchange."

Defendant also asserted trial counsel should have visited the locations in Carteret or NSP where the transactions took place. The PCR court found even if counsel had surveyed the particular locations, the outcome of the trial would not have changed. The evidence showed defendant was given the money and telephone calling card from Dawson and turned it over to Brendan in the prison. Investigators corroborated the serial numbers on the money.

Defendant asserted that if defense counsel had investigated the prison security protocols applied to correction officers, he would have learned "it would have been impossible for [him] to smuggle contraband into the facility." The PCR court found these allegations lacked factual support, noting counsel had in fact obtained information regarding the prison's security procedures during discovery.

The court stated it was reasonable for counsel to conclude that further investigation into the protocols was unnecessary because a telephone calling card and cash could be "easily smuggled" into the prison even with "especially stringent" protocols since these items were not "inherently suspicious" for prison personnel to have in their possession. The PCR court concluded that

A-2964-18T1

even if the prison security protocol evidence had been presented to the jury, defendant had failed to demonstrate how it would have changed the outcome of his case.

The PCR court also considered defendant's assertion that trial counsel improperly allowed the jury to hear N.J.R.E. 404(b) evidence that damaged defendant's credibility and reputation. Specifically, defense counsel asked Alvin and Brendan on cross-examination about prior CDS sales made by defendant in the prison. Defendant contended this opened the door for questioning of him about other illegal activity when he testified.

The court noted defense counsel was questioned about his strategy during trial and he advised it was purposeful with the intent to discredit Alvin's version of his own participation and role in the events. Furthermore, the court stated defendant was acquitted on two of the charges. Therefore, defendant had not established how trial counsel's questions adversely affected the outcome of the trial.

Finally, the PCR court considered and rejected defendant's additional ineffective assistance claims presented in his pro se supplemental brief because they "d[id] not offer sufficient evidence to satisfy the Strickland test."

On appeal, defendant raises the following points:

11

POINT I

BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR PCR.

POINT II

BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, THE PCR COURT ERRED IN DENYING AN EVIDENTIARY HEARING.

Specifically, defendant renews his arguments that trial counsel was ineffective for: (1) failing to investigate the prison security protocol for corrections officers entering the prison to determine how contraband could have been smuggled into the facility; (2) failing to further investigate the availability of prison surveillance videos and to file a motion compelling SID investigators to release information as to why the videos were unavailable; and (3) opening the door to "damaging" N.J.R.E. 404(b) testimony from several State witnesses that defendant had previously smuggled drugs into the prison. Finally, defendant argues the PCR court erred in finding he was not entitled to an evidentiary hearing.

The standard for determining whether trial counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland

12

v. Washington, 466 U.S. 668, 687 (1984) and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).

In order to prevail on a claim of ineffective assistance of counsel, defendant must meet the two-pronged test establishing both that: (1) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

We are satisfied from our review of the record that defendant failed to demonstrate trial counsel was ineffective under the Strickland-Fritz test, and we affirm substantially for the reasons expressed by the PCR court.

In first addressing the argument regarding the prison security protocol, it was undisputed that trial counsel had obtained this information during discovery. As the PCR court noted, counsel acted reasonably in not pursuing any further investigation as it was evident that corrections officers could smuggle this type of contraband into the prison regardless of a protocol.

13

Moreover, defendant did not demonstrate any further procedural information would have changed the outcome. There was ample evidence to convict defendant from surveillance footage and audio recordings of the transaction with Ashley.

In turning to defendant's assertion that trial counsel failed to obtain the prison surveillance video evidence, defendant did not establish that the video existed and was improperly withheld by the State. To the contrary, defense counsel used the non-production of the footage to his advantage in challenging the State's case. Furthermore, it was undisputed the surveillance videos were unavailable because the recording system only kept fifteen days of footage and investigators could not preserve the videos without risking their investigation. Therefore, defendant did not demonstrate trial counsel was ineffective in failing to secure surveillance video evidence that was not available.

We also discern no error in the PCR court's conclusion that trial counsel had a reasonable strategy in his use of the testimony regarding defendant's alleged past drug smuggling activity in the prison to discredit several key State witnesses. Moreover, defendant failed to demonstrate any prejudice from the testimony because he was acquitted of the conspiracy to distribute CDS and money laundering charges.

A-2964-18T1

Because defendant has not demonstrated a prima facie case of ineffective assistance of counsel, he was not entitled to an evidentiary hearing and the petition was properly denied.  See State v. Preciose, 129 N.J. 451, 462 (1992).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2964-18T1